UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| v. | : | No. 3:09cr117 (MRK) |
| | : | |
| DONALD PARKER | : | |

## **RULING AND ORDER**

Currently pending before the Court is Donald Parker's *pro se* Motion for a New Trial [doc. # 1344]. The Court has previously ruled on Mr. Parker's suppression motion, *see United States v. Parker*, No. 3:09cr117 (MRK), 2010 WL 781989 (D. Conn. Mar. 5, 2010), and Mr. Parker's Rule 29 motion for judgment of acquittal, *see* Ruling and Order Denying Mot. for J. of Acquittal [doc. # 1004]. The Court refers readers to those decisions for a statement of the facts relevant to this case. In support of his motion for a new trial, Mr. Parker raises four arguments: (1) he was incompetent both before and during his trial; (2) evidence was admitted at trial that was seized pursuant to an invalid warrant; (3) there is new evidence that one of Mr. Parker's customers had beige instead of white cocaine; and (4) he received ineffective assistance of counsel before and during trial. The Court rejects all four of those arguments.

**I.**

A motion for a new trial under Rule 33 of the *Federal Rules of Criminal Procedure* permits the Court to grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33; *see United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001); *United States v. Abu-jihaad*, 600 F. Supp. 2d

363, 383 (D. Conn. 2009). "By its terms, Rule 33 confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). Though a district court is entitled on a Rule 33 motion to "weigh the evidence and in so doing evaluate for itself the credibility of the witnesses, it must strike a balance between weighing the evidence and credibility of witnesses and not wholly usurping the role of the jury." *See United States v. Triumph Capital Group, Inc.*, 544 F.3d 149, 159 (2d Cir. 2008) (quotation marks and citation omitted). Accordingly, a court should exercise its discretion under Rule 33 cautiously, with due respect for the jury's verdict. *See Sanchez*, 969 F.2d at 1414.

The ultimate test on a motion for a new trial pursuant to Rule 33 is whether letting a guilty verdict stand would constitute a "manifest injustice." *United States v. McCourty*, 562 F.3d 458, 477 (2d Cir. 2009) (quotation marks and citation omitted). The district court must be satisfied that "competent, satisfactory, and sufficient evidence" in the record supports the jury verdict. *See United States v. Bell*, 584 F.3d 478, 483 (2d Cir. 2009) (quotation marks and citation omitted). It must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. *See id.* There must be "a real concern that an innocent person may have been convicted." *Id.* (quotation marks and citation omitted). Generally, a court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority "sparingly and in the most extraordinary circumstances." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quotation marks and citation omitted).

**II.**

None of the four arguments Mr. Parker offers in support of his Rule 33 motion is persuasive,

and there is no basis for ordering a new trial in this case.

## A.

First, Mr. Parker's competency claim is not substantial. A defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (quotation marks omitted); *see United States v. Morrison*, 153 F.3d 34, 46 (2d Cir. 1998). The Court may give substantial weight to a defense attorney's affirmative representation that the defendant is competent, *see, e.g.*, *United States v. Quintieri*, 306 F.3d 1217, 1233-34 (2d Cir. 2002); *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995), and even to a defense attorney's "failure . . . to indicate that the defendant had any difficulty assisting in preparation or in comprehending the nature of the proceedings." *Quintieri*, 306 F.3d at 1233. A court must order a competency hearing only if there is "reasonable cause" to believe that the defendant may be "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a); *see Quintieri*, 306 F.3d at 1232. "In deciding that a competency hearing is unnecessary, a court may rely not only on psychiatrists' reports indicating competency but also on its own observations of the defendant." *United States v. Nichols*, 56 F.3d 403, 414 (2d Cir. 1995).

In this case, although there are no psychiatrists' reports for the Court to consider, the Court observed Mr. Parker at the suppression hearing, during voir dire, and at trial. In all of those contexts, Mr. Parker seemed extremely calm and appeared to be assisting his lawyer. Mr. Parker's attorney never argued that Mr. Parker was incompetent. Moreover, Mr. Parker did not raise the issue of competency until nearly a year after trial and after he had discharged the court-appointed lawyers that

3

the Court had afforded him. Throughout the course of this case, Mr. Parker has not hesitated to communicate with the Court and express his views, and during the trial he never suggested that he did not understand the charges against him or that he was finding it difficult to assist his lawyer in the preparation of his defense. There was no reasonable cause to believe that Mr. Parker was incompetent either before or during the trial, and Mr. Parker's recent claims to the contrary lack credibility. Accordingly, the Court concludes that an evidentiary hearing is unnecessary and that Mr. Parker was competent before and during trial. *See United States v. Xiao Qin Zhou*, 428 F.3d 361, 379 (2d Cir. 2005); *Nichols*, 56 F.3d at 414.

**B.**

Second, Mr. Parker's suppression argument is also insubstantial. Mr. Parker argues that the warrant authorizing a search of his residence was invalid for two reasons: (1) it was denied, and (2) it was misdated. There is no support for those assertions. Mr. Parker attached to the Memorandum in Support of his Motion for a New Trial copies of the search warrant and affidavit as well as the return. *See* Ex. to Mem. in Supp. of Mot. for a New Trial [doc. # 1345] at 13-18. The affidavit is dated March 3, 2009, which is consistent with Detective Pillai's testimony at the suppression hearing. The Connecticut Superior Court judge's signature on the warrant is also dated March 3, 2009. As is apparent from the face of the document, the warrant was granted by the Connecticut Superior Court judge. Although the bottom of page 5 of the warrant application – which is the Search and Seizure Warrant itself – does contain a notation of "denied," that notation pertains to the affiant's request that the judge dispense with the requirement that a copy of the affidavit in support of the warrant be given to the owner or occupant of the premises. *See* Search and Seizure Warrant, Ex. to Mem. in Supp. of Mot. for a New Trial [doc. # 1345] at 13. It seems that Mr. Parker simply misread the document or

misunderstood the implication of the "denied" notation.

## C.

Third, the "evidence" of Mr. Parker's customer having "beige" cocaine instead of the "white" cocaine that co-defendant Peter Maylor possessed at the time of his arrest does not warrant a new trial. "A new trial pursuant to Rule 33 based on newly discovered evidence may be granted only upon a showing that the evidence could not with due diligence have been discovered before or during the trial, that the evidence is material, and that the admission of the evidence would lead to an acquittal." *United States v. Owen*, 500 F.3d 83, 87 (2d Cir. 2007). Mr. Parker cannot make those showings. Mr. Parker would have been aware of the color of the cocaine he sold to Mr. Pace, and, since Mr. Parker's counsel was provided with all discovery information in this multi-defendant case, the color of cocaine recovered from Mr. Maylor could have been discovered with due diligence before or during trial. In addition, in support of his ineffective assistance of counsel claim, Mr. Parker himself argues that his counsel should have introduced "the fact that there were two dif[f]erent kinds of cocaine" at trial, Mem. in Supp. of Mot. for a New Trial [doc. # 1345] at 5, thereby conceding that the information is evidence that was discovered or could have been discovered with due diligence before or during trial.

Moreover, even if the information regarding the different colors of cocaine recovered from Mr. Pace and Mr. Maylor qualified as newly discovered evidence – and it does not – there is no reason to believe that admission of that evidence would lead to Mr. Parker's acquittal. The evidence of Mr. Parker's guilt and specifically his membership in the Maylor conspiracy was overwhelming. The fact that Mr. Maylor was found with "white" cocaine several months after Mr. Parker's customer was found with "beige" cocaine does not change the reasonableness of the jury's finding that Mr.

Parker was guilty of conspiracy to possess with the intent to distribute and to distribute cocaine or its finding that he was guilty of possession with intent to distribute cocaine, nor would it be likely to affect the jury's verdict. *See* Ruling and Order Denying Mot. for J. of Acquittal [doc. # 1004] at 2-3 (describing evidence that supported the jury's verdict and drug quantity determination).

**D.**

Fourth and finally, Mr. Parker's ineffective assistance claim is without merit. To support a claim of ineffective assistance of counsel, a defendant must demonstrate, first, "that his trial counsel's performance fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). In determining whether counsel's performance was objectively reasonable, this Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotation marks and citation omitted). Second, the defendant must demonstrate "that he was prejudiced by counsel's deficient acts or omissions." *Johnson v. United States*, 313 F.3d 815, 818 (2d Cir. 2002) (citing *Strickland*, 466 U.S. at 687-90). In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In this case, Mr. Parker cannot satisfy either prong of that standard. Mr. Parker argues that his counsel was ineffective for eight reasons, none of which are compelling.

First, Mr. Parker's argument that his counsel was ineffective because he "failed to introduce the fact that there were two dif[f]erent kinds of cocaine," Mem. in Supp. of Mot. for New Trial [doc.

# 1345] at 5, fails both prongs of the *Strickland* test. As the Court has already explained, the fact that Mr. Maylor was found with white rather than beige cocaine would not likely affect the jury's verdict. There was overwhelming evidence of Mr. Parker's guilt, and the fact that the cocaine recovered from Mr. Maylor was a different color than the cocaine recovered from Mr. Pace would not reasonably cast doubt on that inculpatory evidence. Thus, the decision by Mr. Parker's counsel not to introduce the fact about the two different colors of cocaine was a reasonable professional decision, and Mr. Parker was not prejudiced by that decision.

Second, Mr. Parker argues that counsel was ineffective for failing to challenge the search and seizure warrant for Mr. Parker's residence. However, since – as the Court has already discussed – there is no basis to conclude the warrant was invalid, counsel was not ineffective for failing to challenge that warrant. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (noting that "a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim" based on counsel's failure to raise a Fourth Amendment challenge); *see, e.g.*, *Mosby v. Senkowski*, 470 F.3d 515, 524 (2d Cir. 2006) ("Mosby cannot maintain that the Fourth Amendment claim underlying his petition is meritorious, and his ineffective assistance claim on that issue fails accordingly.")

Third, it was not unreasonable for counsel to agree that as a result of the Government's concession that it would not offer physical evidence from or statements made during the March 3, 2010 traffic stop of Mr. Parker during its case-in-chief, the motion to suppress that evidence could be denied as moot. *See* Post- Hr'g Supplemental Mem. of Law in Supp. of Mot. to Suppress [doc. # 772] at 1. The Court would have denied the motion as moot regardless of whether Mr. Parker "agreed," and, in any case, Mr. Parker's counsel achieved Mr. Parker's objective regardless of whether the motion to suppress was formally granted or declared moot.

Fourth, there was nothing unreasonable in counsel's decision to file a motion to acquit without an accompanying memorandum of law, and Mr. Parker was not prejudiced by his counsel's action. The Court is well aware of the standard for evaluating a Rule 29 motion, and Mr. Parker does not identify any law that his counsel could have cited that would have changed the Court's ruling on that motion.

Fifth, it was not unreasonable for counsel to fail to pursue particular avenues of cross-examination or to decline to call Detective Pillai and two analysts from the state as witnesses. "A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel." *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002). Mr. Parker is vague about which aspects of the Government's case he would have sought to call into question with the testimony of the additional witnesses, and as the Government points out, examination of Detective Pillai would have given the Government another opportunity to emphasize the evidence it had against Mr. Parker. Like decisions about whether to call certain witnesses, "[d]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). There is no reason to conclude that counsel's decisions with regard to those matters were unprofessional errors, let alone errors that prejudiced Mr. Parker.

Sixth, Mr. Parker's broad assertions that he was denied "'access' to [his attorney's] counsel," Mem. in Supp. of Mot. for a New Trial [doc. # 1345] at 6, are not credible. Throughout this case, Mr. Parker has not been shy about expressing to the Court dissatisfaction with counsel. It is only now, over a year after the fact, that Mr. Parker alleges for the first time that his attorney failed to communicate with him, failed to consult with him regarding the proceedings, and failed to

8

adequately prepare him for trial. Mr. Parker now alleges, in addition, that his attorney "failed to allow [him] to testify on [his] own behalf." Mem. in Supp. of Mot. for a New Trial [doc. # 1345] at 6. While "[a] defendant in a criminal case has the right to testify on his own behalf," *Chang v. United States*, 250 F.3d 79, 82 (2d Cir. 2001), Mr. Parker never indicated to the Court that he wished to testify nor asked the Court for permission to testify over the objections of counsel. Moreover, Mr. Parker's counsel, who has considerable experience with criminal cases, mounted a zealous defense. He cross-examined the Government's witnesses vigorously and pursued a suppression motion as well as a motion for judgment of acquittal following trial. Counsel's choices represented his trial strategy on Mr. Parker's behalf and were in no way objectively unreasonable.

Seventh, Mr. Parker asserts that his counsel was ineffective because he "failed to have [Mr. Parker's] physical, mental, . . . and emotional condition evaluated before trial." Mem. in Supp. of Mot. for a New Trial [doc. # 1345] at 6. As already noted, the Court has seen no indication that Mr. Parker was incompetent to understand the trial proceedings and to assist in his own defense, and the Court cannot fault Mr. Parker's counsel for failing to seek a psychiatric evaluation of Mr. Parker in the absence of any evidence that Mr. Parker ever manifested signs of being incompetent. Mr. Parker's conclusory assertion that he "was quite impaired before and during the trial," *id.*, is insufficient to support a claim that his counsel's failure to have a psychiatric evaluation of Mr. Parker completed was an unprofessional error, let alone an error that prejudiced Mr. Parker.

Eighth, Mr. Parker argues that his counsel was ineffective because he failed to seek suppression of wiretap evidence. However, Mr. Parker never previously indicated to the Court that he wanted his counsel to pursue suppression of the wiretaps. Moreover, Mr. Parker has made no showing that a motion to suppress the wiretaps would have been meritorious. Thus, there is no

reason to believe that counsel's failure to seek suppression of the wiretaps was an unprofessional error, let alone that the failure to seek suppression of the wiretaps prejudiced Mr. Parker. *See Kimmelman*, 477 U.S. at 375.

In sum, Mr. Parker has not "overcome the presumption that, under the circumstances, the challenged action[s] [or omissions] by his attorney might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Nor has he demonstrated that he was prejudiced by any of the challenged actions or omissions. Thus, the Court will not order a new trial on the basis that Mr. Parker received ineffective assistance of counsel.

### III.

For the foregoing reasons, Mr. Parker's Motion for a New Trial [doc. # 1344] is DENIED.

IT IS SO ORDERED,

/s/       Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: June 29, 2011.**